**Mirlah Coys ADWAN, Appellant,**

v.

**Kenneth O. ADWAN, Appellee.**

No. 18857.

Court of Civil Appeals of Texas, Dallas.

May 27, 1976.

Rehearing Denied June 24, 1976.

las County to enforce a property settlement agreement made between the parties at the time of their divorce. The district court denied relief, and plaintiff appeals. She contends that the court erred in striking her claim for child support payments specified in the agreement and in failing to render judgment in her favor for one-half of certain funds which, she says, were not divided by the agreement or by the divorce decree. She alleges that the funds not divided include the proceeds of certain notes and a refund of federal income taxes. We hold that the trial court should have entertained her claim for child support payments and should have awarded her judgment for her part of the note proceeds, but properly denied her claim for the alleged tax refund.

### 1. *Child Support*

The petition alleges that by the terms of the written settlement agreement, defendant agreed as follows:

> That he will pay child support for the maintenance, education and support of the minor children of the parties hereto, until they attain the age of eighteen (18) years, as follows:
>
> (a) The sum of one hundred fifty dollars ($150.00) per month for each child payable on the 1st day of March, 1972, and a like sum on the first day of each succeeding month thereafter, to the Child Support Division of the Juvenile Court of Dallas County, Texas, which sum so paid may be withdrawn by Respondent and used by her for the maintenance, education and support of such minor children.

The petition further alleges that the same provision for child support was reiterated in an agreed divorce decree but that defendant had subsequently discontinued the child support payments, to plaintiff's damage in the amount of $14,400.

■ Defendant excepted to these allegations on the ground that they were not a proper subject of relief in this action in that the domestic relations court, in an action subsequent to the divorce, had entered an order appointing defendant managing conservator of all the minor children, and thus

Jack Hill, Hill & Shettle, Dallas, for appellant.

R. L. McSpedden, Collie, McSpedden & Roberts, Dallas, for appellee.

GUITTARD, Justice.

Mirlah Adwan sued her former husband, Kenneth Adwan, in a district court of Dal-

had continuing jurisdiction of all matters affecting the parent-child relationship.[1] The trial court sustained this exception and struck the allegations relating to child support.

Plaintiff contends that the trial court erred in holding that the domestic relations court had exclusive jurisdiction to hear matters relating to child support obligations under a property settlement agreement. She points out that she is not seeking to enforce the order of the domestic relations court by a contempt proceeding, but rather seeks to recover money damages for breach of defendant's contractual obligations in the settlement agreement. She argues that the suit properly invokes the general civil jurisdiction of the district court. In support of this argument, she cites *Lee v. Lee*, 509 S.W.2d 922, 926 (Tex.Civ.App., Beaumont 1974, writ ref'd n. r. e.), which holds that the district court erred in failing to render judgment for the full amount of support payments provided by contract even though the domestic relations court had reduced the amount of payments, in so far as they were enforceable by contempt proceedings, because one of the children was no longer in the mother's custody.

We are of the opinion that the same rule applies here unless it has been changed by Tex. Family Code Ann. § 11.05(a) (Vernon Supp.1975). This section provides in part:

[W]hen a court acquires jurisdiction of a suit affecting the parent-child relationship, that court retains continuing jurisdiction of all matters provided for under this subtitle in connection with the child, and no other court has jurisdiction of a suit affecting the parent-child relationship with regard to that child except on transfer as provided in Section 11.06 of this code.

Defendant contends that the trial court properly sustained his special exception because under this section of the Code, the domestic relations court had acquired jurisdiction of the children in a subsequent suit to change custody and retained continuing jurisdiction to the exclusion of the district court with respect to any "suit affecting the parent-child relationship." The question is whether the present action in the district court is a "suit affecting the parent-child relationship" within § 11.05. We conclude that it is not such a suit. The concept of a "suit affecting the parent-child relationship" is an innovation introduced by the Code. Smith, *Title 2. Parent and Child*, 5 Tex.Tech.L.Rev. 389, 391 (1974). It is defined in § 11.01(5) of the Code as follows:

"Suit affecting the parent-child relationship" means a suit *brought under this subtitle* in which the appointment of a managing conservator or a possessory conservator, access to *or support of a child*, or establishment or termination of the parent-child relationship is sought. [Emphasis added.]

In order to determine whether the present action is a "suit brought under this subtitle," we must examine generally the provisions of Subtitle A of Title 2 of the Family Code, which includes §§ 11.01 to 17.09. Sections 11.02 to 11.19 govern proceedings in such a suit. Section 11.08 prescribes the contents of the petition, including the "statutory grounds" on which the court is requested to act. Evidently, therefore, a "suit affecting the parent-child relationship" may be brought only on statutory grounds. Among the statutes governing child support are §§ 14.05 and 14.06. Section 14.05 provides for court orders for periodic support payments, and § 14.06 permits written agreements for support, but further provides:

(d) Terms of the agreement set forth in the decree may be enforced by all remedies available for enforcement of a judgment, including contempt, but are not enforceable as contract terms unless the agreement *so provides*.

As we interpret this subsection in the light of the other provisions of Subtitle A, a suit to enforce the terms of a support

---

1. This exception is an improper "speaking demurrer," since it is based on facts not alleged in the petition, but our holding would be the same if it were a plea in abatement properly verified.

agreement set forth in the decree by contempt proceedings or other remedies available for enforcement of a judgment must be "brought under this subtitle" as a "suit affecting the parent-child relationship," but a suit to enforce the terms of such an agreement as contract terms is not one "brought under this subtitle," and, further, is not permitted unless the agreement provides that it may be enforced as a contract. If the contract does so provide, the suit may be brought, but it must be brought under the common law rather than "under this subtitle." The effect of § 14.06(d) is to exclude from the operation of the Code an action to enforce the provisions of a support agreement "as contract terms" if the agreement provides that it may be so enforced. If such a suit is brought under the common law rather than under the Code, it is not a "suit affecting the parent-child relationship" as defined in § 11.01. Consequently, it is not within the "continuing jurisdiction" provisions of § 11.05, which apply to a "suit affecting the parent-child relationship."

In view of this construction of Subtitle A, we must decide whether the present action is one to enforce the provisions of the support agreement "as contract terms," and if so, whether the contract provides for such enforcement. We conclude that both of these questions must be answered in the affirmative. Plaintiff seeks only a judgment for damages for failure to make payments as provided by the contract, not an order holding defendant in contempt for failure to comply with the support order in the divorce decree or any other order appropriate to enforcement of a judgment. With respect to enforcement of the provisions of the agreement as contract terms, the agreement provides:

> The parties hereto agree that they will request the Domestic Relations Court No.

3 of Dallas County, Texas to ratify, approve and confirm this Property Settlement Agreement in any Decree of Divorce which may be signed and entered in this cause, and they further agree that the covenants and agreements herein contained shall survive said Judgment and that such covenants and agreements shall be binding upon the parties hereto, and their heirs and legal representatives, until fully discharged.

The clear intent of this language is that the terms of the agreement shall be binding on the parties as contract terms and enforceable as such even though they are also set forth in the decree. Therefore, according to our interpretation of the Code as above stated, this suit is one excluded from the operation of Subtitle A rather than one brought under its provisions. Consequently, it may be maintained as a contract action based on the common law along with other issues concerning enforcement of the agreement, and the trial court erred in striking it.[2]

■ Defendant asserts that plaintiff ought not to maintain this suit because after the agreement was made and the divorce decree was signed, the children ceased living with plaintiff and an action to change custody was instituted in the domestic relations court, which made an order appointing defendant as managing conservator.[3] Since the question before us arises on an exception to plaintiff's pleading, we are not called on to decide whether these facts, if true, would constitute a defense to plaintiff's claim for contractual support payments or would afford defendant any remedy if plaintiff fails to use the funds "for the maintenance, education and support of such minor children," as the agreement provides.

2. In view of our disposition of this matter, we need not consider defendant's argument that § 11.05 does not deprive the district court of jurisdiction because this suit was filed before the effective date of Title 2 of the Code. Our holding should not be construed, however, as passing on the question of whether § 11.05 affects a suit pending at the time Title 2 became effective.

3. Defendant provides no record references to support this assertion, and we have found nothing in the record to support it other than the unsupported allegation in defendant's exception, but under our holding this omission is immaterial.

### 2. The Ansel Notes

The next question is whether the trial court properly denied the plaintiff recovery for one-half of the proceeds of the sale of certain notes of Ansel Manufacturing Corporation. Before the divorce, the parties owned three notes of this corporation aggregating $20,000 in face value, together with certain shares of stock in the corporation. Defendant had also guaranteed ten percent of the debts of the corporation, and this guaranty was presumably a community obligation. The property settlement agreement, which is dated April 20, 1972, and which embodies an oral agreement submitted for the court's approval at the divorce hearing on February 8, 1972, lists "125 shares of the capital stock of Ansel Manufacturing Company" as part of the "property partitioned to Kenneth O. Adwan," but does not list the Ansel notes. Other notes are listed. A transcript of the evidence taken at the hearing of February 8, 1972, shows that plaintiff Mirlah Adwan agreed that defendant should receive the Ansel stock as part of the assets partitioned to him, but this evidence includes no reference to the notes.

After the divorce hearing and before the written agreement and divorce decree were signed, defendant sold the stock to another stockholder for $12,500 and sold the notes to the same purchaser for $10,000. The purchaser assumed liability on the guaranty of Ansel's debt. Defendant did not reveal to plaintiff or her counsel that he had received these funds. He used the proceeds of the notes to pay obligations he had assumed under the settlement agreement, including plaintiff's attorney's fee. The decree provides that all assets not specifically mentioned "be and they are hereby partitioned to the parties hereto in common, share and share alike and that each party hereto be and they are hereby vested with fee simple title to an undivided one-half thereof."

Plaintiff contends that since the notes are not listed and specifically partitioned, she remained the owner of a one-half interest and is entitled to one-half of the proceeds received by defendant. Defendant contends that the Ansel notes and stock were "treated by the parties as one package," and, consequently, that the parties intended to include the notes as well as the stock among the assets partitioned to the defendant. He argues that the failure of the written agreement to include the notes was a mistake on the part of plaintiff's attorney, who, at the hearing on February 8, inadvertently omitted any reference to these notes, although he had information about them from his pretrial discovery, but nevertheless stated in the presence of both parties and the judge, "I have outlined or identified all the properties I know of that are to be partitioned between the parties." There was also evidence at the present trial showing that when the divorce case was heard on February 8, 1972, the parties considered the Ansel notes and stock to be worthless, and that defendant offered them to plaintiff if she would assume the guaranty obligation, but that plaintiff, through her counsel, declined to accept them. There is also testimony in the present record that the other stockholder who purchased the notes and the stock did so in the mistaken belief that they had value although, in fact, they had none.

The trial court found that neither the stock nor the notes had any value and that both plaintiff and defendant "treated and considered the Ansel stock and Ansel notes as one package."

We do not agree that the settlement agreement was effective to vest full ownership of the Ansel notes in defendant. Even if the parties did consider the stock and the notes for some purposes as "one package," there is no evidence that they made any agreement to treat them as a single item in the division of their property. The circumstance that the notes and the stock had been offered to plaintiff if she would assume liability on the guaranty and plaintiff by her attorney had refused this offer has no bearing on the question of whether the notes as well as the stock were in fact partitioned to defendant in the settlement agreement. The notes were not mentioned at the hearing when the oral settlement

agreement was presented to the court, and neither were they listed in the written agreement or in the divorce decree. Consequently, plaintiff retained her interest in them, and when they were sold, she was entitled to one-half of the proceeds. Since these proceeds were applied to obligations which defendant had assumed, he is liable to her for her part. (We have no problem as to whether plaintiff should assume liability on the guaranty because this liability was assumed by the purchaser, and if any contingent liability remains, it is within defendant's general assumption of liability in the settlement agreement.)

■ Defendant argues that if the settlement agreement failed to include the notes, this failure was the result of a mutual mistake, or a mistake on the part of plaintiff's attorney, since he knew of the existence of the notes but erroneously stated at the hearing on February 8 that he had identified all the properties to be partitioned. Consequently, defendant says that the agreement should be reformed to include the notes as well as the stock. We cannot reform the agreement because no such relief was sought in the trial court. We do not remand the cause to give defendant an opportunity to seek equitable reformation because the terms of the contract have been embodied in a judgment, and defendant does not suggest that the requisites of a bill of a review are present.

### 3. The Tax Refund

■ The other asset which plaintiff asserts was not divided at the time of the divorce was an alleged federal income tax refund for the year 1971. We conclude that the trial court was correct in holding that there was no such asset subject to division.

The evidence shows that defendant made an overpayment of the parties' 1971 taxes in the amount of $4,042.03. A refund in this amount was requested in the tax return for that year. However, the Internal Revenue Service assessed a deficiency for the year 1969 of more than $13,000 and applied the overpayment to the deficiency.

Plaintiff contends that since by the terms of the settlement agreement defendant agreed to "pay all income taxes legally assessed against [the parties] or either of them attributable to the income received by the parties from the date of their marriage, up to and including February 8, 1972," the payment of the 1969 deficiency was defendant's individual obligation, and, consequently, that defendant could not properly apply her interest in the credit for overpayment of the 1971 tax to this obligation. Plaintiff further suggests that defendant deliberately made an overpayment of the 1971 tax in January 1972 in order to apply community funds to discharge his individual liability assumed in the property settlement agreement.

We find no merit in this contention. The settlement agreement was not made until February 8, 1972, and was not reduced to writing and signed until April 20, 1972. If defendant suspected in January 1972 that he would face a deficiency for previous years, he had the right to file an amended return and use community funds to pay the additional tax due. If, instead of making an additional payment for 1969, he chose to make an overpayment for 1971, the Internal Revenue Service was authorized to apply that overpayment to the deficiency for 1969, as it did, rather than issue a check for a refund. The net effect was that the overpayment in January 1972 resulted in discharge of an existing tax liability, and there was never a refund which could properly be considered an undivided asset at the time of the divorce.

The judgment is affirmed in so far as it concerns plaintiff's claim for the alleged tax refund. In so far as the judgment denies recovery of one-half of the proceeds of the sale of the Ansel notes, that judgment is reversed and judgment is here rendered for plaintiff in the amount of $5,000 with interest from March 20, 1972, the date of the sale, at the rate of six percent per annum. In so far as the judgment denies recovery for past and future child support payments, it is reversed and the cause is

remanded to the district court for further proceedings.