

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00431-CV

———————————————

MICHAEL DAMIEN DUNN, Appellant

V.

PAMELA SUE DUNN, Appellee

On Appeal from the 442nd District Court
Denton County, Texas
Trial Court No. 19-3053-442

Before Bassel, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Bassel

**MEMORANDUM OPINION**

Appellant Michael Damien Dunn (Husband) appeals the trial court's Final Decree of Divorce signed August 3, 2022 (the Decree) and Order on Motion for Clarification of Final Decree of Divorce. His only issue in this appeal concerns the trial court's property division, which was based on an agreement between Husband and Appellee Pamela Sue Dunn (Wife). Husband argues that, "without any evidence to support a deviation from the agreement, the trial court's division of the parties' net equity in their marital residence failed to comport with the parties' agreement." Husband's central contention is that the trial court deviated from the agreement by failing to include a term that the parties' marital residence would be appraised for a value as of a date certain, which in this case was the date that the parties announced their agreement to the court. Wife responds that the trial court correctly understood the parties' agreement and that the Decree "honored this agreement." We affirm because the trial court correctly interpreted the parties' agreement as not including a provision that the residence be valued as of a date certain.

## I. BACKGROUND

Husband and Wife were married in 2005. In 2019, Wife filed an Original Petition for Divorce, and Husband filed a Counter-Petition for Divorce. The case was set for final trial on August 24, 2020, but by then the parties had reached an agreement on the division of their marital estate. We now quote the relevant portions of that agreement in their entirety, as read by the parties into the record:

2

[WIFE'S ATTORNEY]: . . . My understanding of the agreement of the parties regarding property is as follows . . . .

The parties agree that [Husband] shall be awarded the marital residence subject to the terms and conditions in the sale or refinance of the marital residence that I'm going to dictate here in a little bit.

He will pay [Wife] 55 percent of the net equity value as determined after a -- an appraisal is done at [Husband]'s expense. He'll pay that within 90 days of the date of the appraisal or the date -- well, what -- do you want to do it the date of the final decree being entered?

[HUSBAND'S ATTORNEY]: These do -- let's do the final decree judgment. We will proceed on the appraisal immediately.

[WIFE'S ATTORNEY]: Okay. . . .

. . . .

If [Husband] is unable to refinance the marital residence, then it will be listed for sale by a realtor that we choose and is acceptable to [Husband's attorney] and his client.

Upon sale of the property, each party will receive 50 percent of the net proceeds. Any repairs that are done will be split 50/50, but they have to be agreed to.

Both Husband and Wife then testified that they believed this was a just and right division of their property. They each asked the trial court to approve the agreement.

At a hearing on June 22, 2022, the parties addressed the agreement "regarding the house." Husband told the trial court that "a formal appraisal" had not been done. He asked for "one week" to get the house appraised, but he argued that the parties' agreement was to get an appraisal of the house's value as of "the date of the agreement," August 24, 2020. The trial court did not accept this argument.

On August 3, 2022, the trial court signed the Decree, which awarded Wife, as

3

her separate property, "55% of the net equity value of the residence awarded to [Husband] as determined after an appraisal is done at [Husband]'s expense." The trial court ordered Husband to "obtain an appraisal within 30 days from the date of the entry of [the Decree and] pay to [Wife] 55% of the net equity value within 90 days of the date of the appraisal date."[1]

Husband requested findings of fact and conclusions of law, which the trial court filed on September 30, 2022. *See* Tex. R. Civ. P. 296, 297. The pertinent findings of fact and conclusions of the trial court are the following:

### Findings of Fact

. . . .

8.  On August 24, 2020, the parties entered into an agreement on the record regarding the division of the property of the parties . . . .

. . . .

14.  At the June 22, 2022 hearing, [Wife] objected to [Husband] including the date of August 24, 2020 as the date the appraisal should consider when determining the value of the marital residence.

15.  On August 3, 2022, the Court held an additional non-evidentiary hearing as to the entry of the Final Decree of Divorce with one issue remaining on [Wife]'s objections to [Husband] including the date of August 24, 2020 as the date the appraisal should consider when determining the value of the marital residence.

---

[1]The Decree further ordered that the property "shall be refinanced in [Husband]'s own name" and that, if Husband was "unable to refinance the . . . property within 90 days from the date of the appraisal," then the property would be sold no later than 120 days from the date the Decree is signed. Husband does not complain about these provisions.

4

. . . .

19. The agreement reached by [Wife] and [Husband] as to the property division and read into the record on August 24, 2022 [sic] was a fair, just and equitable division of the community estate.

20. The Court's record of August 24, 2020 indicates that [Wife] was awarded fifty-five percent (55%) of the net equity value of the residence as determined after an appraisal was done at [Husband]'s expense.

21. The Court's record of August 24, 2020 indicates that [Husband] was to pay [Wife] her portion of the net equity within 90 days of the date of the appraisal.

22. The Court's record of August 24, 2020 indicates that [Husband] was going to proceed on the appraisal "immediately."

. . . .

26. Any finding of fact that is a conclusion of law shall be deemed a conclusion of law.

. . . .

### *Conclusions of Law Division of Marital Estate*

The Court CONCLUDES—

34. The parties agreed to the division of property as set out in the record from August 24, 2020.

. . . .

36. The agreement read into the record on August 24, 2020 did not include a date the appraisal would be conducted.

37. [Husband] did not proceed to obtain an appraisal of the property on August 24, 2020 and as of the date of the entry of the Final Decree still had not obtained an appraisal.

38. [Wife] had the ability and authority to order an appraisal at any time after August 24, 2020.

5

39. [Husband]'s contention of using a Comparative Market Analysis retroactive to August 24, 2020 was not part of the agreement read into the record.

40. The Court declines to retroactively assign a date of the appraisal to determine the value of the marital residence.

41. The determination of [Wife]'s portion of the net equity from the residence will be determined as of the date the appraisal is actually completed.

On September 2, 2022, Husband filed a Motion for Clarification, claiming that the Decree needed "to be clarified because it fail[ed] to identify with specificity the parties' agreed-to date of division for the appraisal value of the parties' marital residence." He argued to the trial court that on August 24, 2020, "the parties [had] agreed to appraise the marital residence immediately and to award Wife a money judgment based on that appraisal." Husband also claimed to have "acquired an appraisal that reflects the value of the marital residence as of August 1, 2020." He attached a copy of the "appraisal" to his motion.

Husband asked the trial court to sign an amended divorce decree incorporating his requested change. While his motion was pending, Husband filed a notice of appeal from the Decree. The trial court heard Husband's Motion for Clarification on November 10, 2022, and denied Husband's request.[2] Husband then filed an amended notice of appeal.

---

[2]At this hearing, the trial court expressed "concern" that it no longer had plenary power to rule on the motion. The trial court told Husband, "I'm going to sign your Order just with the caveat when the Court of Appeals reads this, I don't

## II. ANALYSIS

Husband frames his only appellate issue as: "Whether the trial court abused its discretion in deviating from the parties' agreement for Husband to pay Wife 55% of the net equity of the marital residence based on an appraisal to be conducted on or about August 24, 2020." He contends that "the unambiguous language of the parties' agreement" tied the amount of net equity he was to pay Wife "to an 'immediate' appraisal of the residence and bore no relation to the final date of divorce." We disagree.

### A. Applicable Law

To promote amicable settlement of disputes in a suit for divorce or annulment, the spouses may enter into a written agreement concerning the division of the property and the liabilities of the spouses. Tex. Fam. Code Ann. § 7.006(a). If the trial court finds that the terms of the written agreement[3] in a divorce or an annulment are just and right, then those terms are binding on the trial court. *Id.* § 7.006(b). A marital property agreement, although incorporated into a final divorce decree, is

---

think I have the plenary power to sign it. But I'm going to sign it just in case they need it, okay? But I'm denying your request." Because the issue of the trial court's plenary power is neither "raised" nor "necessary to final disposition" of this appeal, we will not address it. *See* Tex. R. App P. 47.1.

[3]An oral agreement "made in open court and entered of record" meets the requirements of a "written agreement" under Section 7.006, *see* Tex. R. Civ. P. 11; *Clanin v. Clanin*, 918 S.W.2d 673, 677 (Tex. App.—Fort Worth 1996, no writ), and Husband concedes that "neither party ever revoked their consent to the agreement before judgment was rendered."

treated as a contract, and its legal force and meaning are governed by the law of contracts. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986); *see also Gulliksen v. Gulliksen*, No. 02-20-00203-CV, 2021 WL 1803616, at *3 (Tex. App.—Fort Worth May 6, 2021, no pet.) (mem. op.) ("An agreed property division incorporated into a final divorce decree is treated as a contract and is controlled by the rules of construction applicable to ordinary contracts.").

Contract construction begins with the express language of the agreement. *Gulliksen*, 2021 WL 1803616, at *3. Interpretation of a contract involves questions of law we consider de novo. *BlueStone Nat. Res. II, LLC v. Randle*, 620 S.W.3d 380, 387 (Tex. 2021). We also review a trial court's construction of a contract de novo. *Dan Dilts Constr., Inc. v. Weeks*, No. 02-17-00373-CV, 2018 WL 5668530, at *2 (Tex. App.—Fort Worth Nov. 1, 2018, no pet.) (mem. op.).

When a contract's meaning is disputed, our primary objective is to ascertain and give effect to the parties' intent as expressed in the contract. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018). Objective manifestations of intent control, not what one side or the other alleges they intended to say but did not. *Id.* at 763–64. In construing a contract, we may neither rewrite it nor add to its language. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003). Also, we must remember that parties to a contract

> are considered masters of their own choices. They are entitled to select what terms and provisions to include in a contract before executing it. And, in so choosing, each is entitled to rely upon the words selected to

8

demarcate their respective obligations and rights. In short, the parties strike the deal *they* choose to strike and, thus, voluntarily bind themselves in the manner *they* choose.

*Doe v. Tex. Ass'n of Sch. Bds., Inc.*, 283 S.W.3d 451, 458 (Tex. App.—Fort Worth 2009, pet. denied) (quoting *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex. App.—Amarillo 2000, no pet.)). We cannot change the contract simply because we or one of the parties comes to dislike its provisions or thinks that something else is needed in it. *Thedford Crossing, L.P. v. Tyler Rose Nursery, Inc.*, 306 S.W.3d 860, 867 (Tex. App.—Tyler 2010, pet. denied) (op. on reh'g); *Birnbaum v. Swepi LP*, 48 S.W.3d 254, 257 (Tex. App.—San Antonio 2001, pet. denied); *Cross Timbers*, 22 S.W.3d at 26.

**B. Discussion**

Based on our de novo review, we hold that the parties' agreement regarding the house was unambiguous. Husband and Wife unambiguously agreed that (1) within 90 days of the date of the final divorce decree being entered, (2) Husband would pay Wife 55% of the house's "net equity value" as determined *after* an appraisal was done at Husband's expense. Contrary to Husband's appellate argument, there was no agreement tying the appraised value of the property to the date of the agreement or to any specific date at all. Husband predicates his argument on his counsel's statement in the record, "We will proceed on the appraisal immediately." Even when accompanied by Wife's counsel's "Okay," that statement cannot be tortured into a term stating that the date of value used for the appraisal would be the date that counsel made the statement.

9

A "meeting of the minds" is a required element of a binding contract. *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 720 (Tex. App.—Fort Worth 2008, pet. dism'd). Here, the record reflects that Wife did not express her assent to a term that the agreed-upon appraisal determine the marital residence's value *as of August 2020*, as Husband now urges. Nor did the trial court interpret the agreement to include such a term. The record contains the following exchange between the trial court and counsel at the hearing on the entry of a final order, during which the trial court attempted to understand the basis for Husband's contention and explained why the trial court rejected the contention:

THE COURT:  What time are you -- what date are you talking?

. . . .

[HUSBAND'S ATTORNEY]:  They would be looking at values for the date of the agreement.

THE COURT:  August 24th of 2022 -- I mean, of 2020?

[HUSBAND'S ATTORNEY]:  Yes, ma'am, because what we would do is they would say -- and that's what the reality is.  The appraisal would look at the house . . . and then what's going to happen is that the real numbers come in when we -- and we offer the appraisals, they're going to look at the values of the homes.  And so they can get the value of the home from the sale in August of 2020, go out there and do the appraisal.  It's not actual timing, I don't think, about doing it or me saying to avoid it.

I think the hope is that the Judge will say we're going to go on 2022 -- and 2022, and they're going to say, we just made money.  And my client's been in that house.  And that agreement, before anybody had a value, was 55 percent at that time.

10

[WIFE'S ATTORNEY]:  Okay.

THE COURT:  And it doesn't say that.

[WIFE'S ATTORNEY]:  Again, it's clear.  Let's do the final decree judgment.  We will proceed on the appraisal immediately.  Didn't get done, so here we are.

[HUSBAND'S ATTORNEY]:  But we didn't get the final decree done.

THE COURT:  Well, I -- actually when you're reading it, he will pay [Wife] 55 percent of the net equity value as determined after an appraisal is done at [Husband]'s expense.  He will pay that within 90 days of the date of the appraisal or the date -- well, that -- do you want to do the date of the final decree?  Let's do the final judgment.  We'll proceed on the appraisal immediately.

*Here's the way I'm reading it.  He will pay [Wife] 55 percent of the net equity value of the value after the appraisal's done at [Husband]'s expense.  It says he will pay within 90 days of the date of the appraisal or the final decree.*

*It doesn't -- I mean, show me where it says that the values are as of August 24th.  I mean, because the way I'm reading it is he's going to pay her 55 percent of the equity value as determined of appraisal.*

*He'll pay within 90 days of the date of the appraisal.  It doesn't say he's going to do the appraisal within 90 days.  It says you're going to do it immediately.  You don't.  It says he's going to pay within 90 days of the appraisal.*

[HUSBAND'S ATTORNEY]:  And if I may, the appraisal -- when people enter agreements, Judge, they finalize it.  It's done.  It's not to continue.  We had a very unique case, and so it kept going.

. . . .

We reached an agreement and cut off property.  That was the -- we're done with property.  The property's done, not continuing on.  Hey, you can keep getting debts and -- or -- and, so, Judge, the appraisal hasn't hurt anyone.  We can get an appraisal.  We can get a value from that date because we know the sales.

11

THE COURT:  But that's not what the agreement says.

[WIFE'S ATTORNEY]:  Nope.

[HUSBAND'S ATTORNEY]:  But it does --

(Talking simultaneously.)

*THE COURT:  It says after appraisal was done at [Husband]'s expense. It doesn't say it's going to be done, then the only time to put in there is from the date of the appraisal.*

[HUSBAND'S ATTORNEY]:  Fair.  So if we did an appraisal and the appraiser says I can do the appraisal and then I can put a value from that time, that's the same thing.

[WIFE'S ATTORNEY]:  No.

THE COURT:  It's not because I don't -- and here's the problem. I am -- I am -- this is not something that is my ruling that I could go, hey, I intended X, Y and Z. It's not that.

This is, he will pay [Wife] 55 percent of the net equity as determined after -- at [Husband]'s expense, he will pay within 90 days of the date of the appraisal.  Oh, no, we're not -- the 90 days is not the appraisal.  I don't even think the 90 days deals with the appraisal.

*He's talking about payment, and it's silent as to when it's appraised.  And I can't go and impute -- let me read the rest of this and see if there's a -- but I can't impute a date on there.*

[HUSBAND'S ATTORNEY]:  Shouldn't that just be by the date -- the agreement is now --

THE COURT:  But the thing --

. . . .

THE COURT:  -- triggering the value is the appraisal.

[HUSBAND'S ATTORNEY]:  Correct.  But the -- and what I'm saying is the date of an appraisal, the actual date doesn't affect what the

12

value of the property was at the time we reached the agreement. They can give you the value then.

THE COURT: I understand that, but that's not what --

[HUSBAND'S ATTORNEY]: So that's --

(Talking simultaneously.)

THE COURT: *I can't impute that. I can't go in and say it's that date. I don't have that authority.* [Emphasis added.]

The trial court was correct; it lacked the authority to "impute" the parties' intent to effect something that was not in the agreement. *See Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006) ("As with any other contract, the parties' intent is governed by what they said, not by what they *intended* to say but did not."); *Matagorda Cnty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex. 2006) ("Courts will give effect to the intention of the parties as expressed or as is apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls." (quoting *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968))). A trial court has no power to supply terms, provisions, or conditions not previously agreed to by the parties. *Keim v. Anderson*, 943 S.W.2d 938, 946 (Tex. App.—El Paso 1997, no writ). A court may either enter a property division agreement in its entirety or decline to enter it at all, but it has no discretion to change such an agreement before entering it. *Engineer v. Engineer*, 187 S.W.3d 625, 626 (Tex. App.—Houston [14th Dist.] 2006, no pet.). We agree with the trial court that there was no mutual assent to appraise the house's value

13

as of the date of the agreement, August 24, 2020. The trial court therefore did not err by declining to write that provision into the Decree.

Husband challenges the Decree in another regard. He points out that the parties had "explicitly agreed" that Husband's payment to Wife would occur 90 days after the entry of final judgment, but the Decree stated that the payment was to take place "within 90 days of the date of the appraisal date." He asks us to modify the Decree to comport with the parties' August 24, 2020 agreement and affirm the judgment as modified. We will not do so. No such relief was sought in the trial court. *See Adwan v. Adwan*, 538 S.W.2d 192, 197 (Tex. App.—Dallas 1976, no writ). Husband could have brought this discrepancy in the Decree to the trial court's attention in his Motion for Clarification, but he did not. In fact, nothing in the record indicates that he ever brought this issue to the trial court's attention.

Further, Husband did not ask the trial court to abrogate the agreement to use an appraisal to determine the value of the marital residence. Thus, it was left to the trial court to implement that agreement in view of the changed circumstance that the agreed-upon appraisal had not been done.[4] To adopt Husband's argument and make the date of payment 90 days from the date of the Decree would now place Husband in breach of the agreement; more than 90 days have elapsed since the date the Decree

_____

[4]It is apparent from the record that the trial court did not consider the "appraisal" Husband procured, which he claimed reflected "the value of the marital residence as of August 1, 2020," to be compliant with his obligation under the agreement.

14

was entered, making it impossible for Husband to comply with the literal terms of the parties' agreement. And the trial court actually benefited and accommodated Husband by not placing him in breach or in the situation where not only the appraisal had to be performed but also Wife paid for her share of the equity within a 90-day period. Husband does not contend that the timing of the payment to Wife was a material term of the agreement.

Husband further argues that there was no evidence to support the trial court's Conclusion of Law No. 36: "The agreement read into the record on August 24, 2020 did not include a date the appraisal would be conducted."[5] We have quoted the parties' agreement verbatim and can plainly see that it did not include a date the appraisal would be conducted; the appraisal just had to be conducted in time for Husband to make the net equity payment to Wife within 90 days of the date of the Decree being entered. Finally, Husband contends that "the trial court erred in failing to require that the appraisal value be based on a retrospective appraisal to determine the marital property's value on or near the date of the parties' August 24, 2020 agreement to accomplish the agreed just and right division of the marital estate" because the trial court had "zero evidence regarding values of the parties' marital estate" and therefore had "no evidence to support a deviation from the parties'

---

[5]We review de novo a trial court's conclusions of law with regard to contract interpretation. *Centerpoint Apartments v. Webb*, No. 2-07-278-CV, 2008 WL 4052929, at *2 (Tex. App.—Fort Worth Aug. 28, 2008, no pet.) (per curiam) (mem. op.). We accord no deference to the lower court's decision. *Id.*

15

unambiguous property agreement." He cites us two of our past decisions, but both are inapposite.

In *B.K. v. T.K.*, we said that "[e]vidence is legally insufficient to support a decree's property division when no evidence of the divided property's value is adduced." No. 02-19-00472-CV, 2021 WL 2149621, at *3 (Tex. App.—Fort Worth May 27, 2021, no pet.) (mem. op.). In *Ball v. Roney*, we held that a trial court abused its discretion in its division of property in the absence of any pleadings or proof to establish the value of the assets and debts. No. 2-08-213-CV, 2008 WL 4831412, at *4 (Tex. App.—Fort Worth Nov. 6, 2008, no pet.) (mem. op.). However, both *B.K.* and *Ball* were restricted appeals from no-answer default judgments. *See* Tex. R. App. P. 26.1(c), 30; *B.K.*, 2021 WL 2149621, at *1; *Ball*, 2008 WL 4831412, at *1. In each case, the only evidence on which the appellee spouse could rely to support the trial court's property division was his own conclusory testimony. *See B.K.*, 2021 WL 2149621, at *3; *Ball*, 2008 WL 4831412, at *3. In the present case, Husband not only filed an answer, he filed a counter-petition. Both parties appeared in court, read their agreed property division into the record, and testified that it was a just and right division of their property.

Additionally, while the record does not contain any direct evidence of the marital residence's value, the parties agreed on an objective means of determining its value—an appraisal—which the trial court set forth in the Decree. Husband asked the trial court to approve the parties' agreement. A party cannot, on appeal, take a

16

position inconsistent with a part of the judgment that he asked the trial court to render. *Litton Indus. Prods., Inc. v. Gammage*, 668 S.W.2d 319, 321–22 (Tex. 1984). He cannot complain either that a finding has "no support in the evidence" or that the evidence was factually insufficient after asking the trial court to enter judgment on the finding. *Id.* at 322.

Lastly, Husband entered into this agreement with Wife not knowing what the house's appraised value would be. He apparently still did not know the value at the hearing nearly two years later, when he conceded that a formal appraisal had not been done. He agreed to pay Wife 55% of the house's net equity value and testified that that was part of a just and right property division. He does not complain on appeal that the 55–45 split was not just and right or that the trial court deviated from *that* part of the agreement; he takes issue only with the date to be used for calculating the house's value. Whatever the appraised value of the house is, it does not change the material terms of the parties' agreed property division: Wife gets 55% of the house's net equity value, and Husband retains the other 45%. The agreement indicated that the 55–45 split, not the value, was key. That split remains the same. The only deviation between the parties' agreement and the Decree involves the point at which Husband's 90-day timetable to pay Wife begins to run, and as noted, that deviation actually helps Husband by giving him additional time to make the payment.

We overrule Husband's sole appellate issue.

## III.  CONCLUSION

We affirm the trial court's Decree.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  August 31, 2023